Argued January 14, affirmed February 10, reconsideration
denied March 26, petition for review denied April 8, 1975

IN THE MATTER OF THE DISSOLUTION OF THE MARRIAGE OF
MARRS, *Respondent, and* MARRS (No. 73-1118-E),
*Appellant.*
531 P2d 713

*William H. Ferguson,* Medford, argued the cause for appellant. With him on the brief were Grant & Ferguson, Medford.

*Alan B. Holmes,* Medford, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and LEE, Judges.

LANGTRY, J.

This is an appeal by the husband in a dissolution-of-marriage case. Wife is the original petitioner. Husband contends error by the court in its division of property, allowance of monthly support to the wife of $450 per month for ten years from July 1, 1974 and award of $1,500 attorney fees.

Husband is 54 and wife 48 years of age. They have been married 24 years and their one child is emancipated. Virtually all of their property is equally owned and was acquired during their marriage. Wife worked part-time in their corporate business, the sales of used cars and vacation vehicles. At time of trial the gasoline shortage was in its acute state; hence, the business was rapidly losing money and owed money

upon its stock in trade. During the past year husband —who manages the business—had drawn $13,400 in salary from the business, an amount substantially less than in previous years. They also own in the name of the corporation two business lots subject to mortgage, on which the corporate business is operated, a mortgaged home, a vacant lot subject to a debt and numerous other items of personal property.

■ Wife and husband are in apparent good health except that wife in 1964 had an operation for cancer in which her right shoulder blade was removed. Husband contends she should be able to earn ample to support herself. Medical evidence in the record indicates that she has lost 65 percent use of the right arm, but that she can work about half-time. She has had experience in telephone work and automobile sales bookwork. Under these conditions, and considering the length of the marriage and the disposition of the property, we think the monthly support payment decreed is just. *See Kitson and Kitson,* 17 Or App 648, 523 P2d 575, Sup Ct *review denied* (1974).

The division of the property by the court's decree is as follows (with the valuations opposite the items being this court's valuations based upon our de novo estimates, relying on over 400 pages of testimony, largely concerning values):

Wife

| | | |
|---|---|---|
| Tax Lot 5900 | | $50,000 |
| (Subject to use in the business for ten years; thus, the lot has no immediate value to wife) | | |
| Residence | | |
| Present market value | $37,800 | |
| Balance owing (to be paid by wife) | 17,800 | 20,000 |

| | | |
|---|---|---|
| Household goods, furnishings | ` | 2,500 |
| 1971 Pontiac | | 1,500 |

TOTAL    $74,000

Husband

| | | |
|---|---|---|
| Tax Lot 5100 (on which business is operated) | | |
| Present market value | $50,000 | |
| Balance owing on mortgage on Lots 5900 and 5100 | 47,330 | $ 3,270 |
| Use of Tax Lot 5900 | | |
| 1% of value per month, ten years | 60,000 | |
| Less taxes, assessments, etc. | 10,000 | 50,000 |
| Marrs For Cars, Inc. | | |
| Stock, including substantial personal property and movable physical structures | | 0 |
| Skycrest Lot (investment property) | | |
| Present market value | 8,750 | |
| Balance owing | 2,250 | 6,500 |
| Honda | | 150 |
| Sitka Fibrafoam boat | | 7,500 |
| Skidoo snowmobile and trailer | | 500 |

TOTAL    $67,920

Explanation is appropriate with respect to three of the assets in this statement: (1) Lots 5900 and 5100, (2) the "Use of Tax Lot 5900" attributed to husband and (3) the Marrs For Cars stock.

■ Tax Lots 5900 and 5100—adjoining properties of apparently comparable value—comprise the site upon which the Marrs For Cars enterprise is maintained. Husband himself estimated the combined value of the lots to be in the neighborhood of $90,000 and introduced the testimony of a real estate salesman experienced in appraising and an independent fee appraiser

both of whom estimated its market value to fall somewhere between $95,000 and $100,000. Wife, however, guessed that the property was worth approximately $125,000 and introduced the testimony of a licensed real estate appraiser who concluded that the property had a value of some $150,000. At the time of the hearings the property had a tax valuation of approximately $89,000. The assessor's office apparently had not increased the total assessment since 1970. Evidence suggested, however, that this was because a study by tax authorities had indicated that no adjustment was called for rather than because of any neglect on the part of the assessor. Giving the valuation for purposes of taxation great weight, and taking into account all of the testimony noted above, $100,000 seems a reasonable valuation for the whole property.

Having awarded Lot 5100 to husband and Lot 5900 to wife, the court also provided that husband would be responsible for (1) the remaining mortgage indebtedness existing on the two lots (which would require payments of some $540 per month for approximately ten years), and (2) all taxes, interest, public assessments or levies against the same property for a ten-year period. In consideration of these payments the decree awarded husband the occupancy and use of both lots for the same ten years provided he continues to use the land for commercial purposes.

Thus, our "balance sheet" shows that the value of Lot 5900 to wife to be $50,000 (market value), while the value of Lot 5100 has been reduced by the amount of the total mortgage.

■ In order to adequately weigh the value of assets received by each of the parties, however, an ad-

ditional item—the use of Lot 5900 for ten years— should be included among items awarded to husband. Husband's difficulty with the property division would, in fact, appear to flow in some measure from his failure to acknowledge the license to use the lot as a valuable asset in spite of his own testimony that the rental value of the lot to him was approximately $450 per month. It should be noted that $450 per month support for wife comes out at about the same figure that the value of rent for Tax Lot 5900 might be. Employing a commonly acceptable method of computing rental value—1 percent of market value per month— the property has a value of $500 per month ($6,000 per year), thereby making the ten-year use granted to husband worth some $60,000. This is reduced by an estimate of $10,000 to account for taxes, assessments, etc., for which husband will be responsible.

■ With regard to the Marrs For Cars stock, one must keep in mind that the hearings occurred during the 1973-74 gasoline shortage which had a devastating effect on all automobile-related businesses, particularly the sales of uneconomical recreational vehicles which comprise the bulk of the corporation's inventory. Wife vigorously argues the corporate assets have substantial value. This may be so. Nevertheless, credible evidence indicates that the value of the vehicle inventory had, in fact, declined to approximately one-half of its cost. The excessive recent losses ($25,000 in 1973 and $7,000 in the first two months of 1974) leave much question about future value of the business. Thus, we have not given it any valuation in our statement of assets. Nevertheless, the business is given entirely to husband, thereby providing him with the opportunity that goes with business property and a business for

earning a substantial income, which he has proved that he can do in normal times.

Having satisfied ourselves that the trial court made, as well as it could considering the uncertainties of the vehicle sales business, a fairly equal division of the property, we look next to consider whether such a division is according to law and just.

Considering the applicable factors reviewed in *Kitson and Kitson,* supra, which had some substantial similarities to the condition of the parties here, we conclude the proper guidelines were followed by the trial court, and we can do no better.

■ An attorney fee for the wife was justified. The amount allowed, considering the difficulty of the case, the time involved and the circumstances of the parties, is reasonably within the bounds of the parties' stipulation as to amount and the general discretion allowed the trial court.

Affirmed. Costs to neither party.